RECEIVED
APR 1 0 2013
U.S.C.A. 3rd

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

GLENN BOGUE
Petitioner-Appellant

V.

COMMISSIONER OF INTERNAL REVENUE

Respondent-Appellee

12-1508

---

ON APPEAL FROM DECISION OF THE UNITED STATES TAX COURT

Case # 12291-09

T.C. Mem  2011 - 164

---

REPLY BRIEF OF APPELLANT GLENN BOGUE

GLENN BOGUE, PRO SE
24 WATERCLIFFE RD
TORONTO, ONTARIO M9W 4E7

ISSUE #1 CONSTITUTIONAL ISSUE

1. The Appellee has cited at page 51 of its Brief a line of cases in the Federal Court of Appeal for the Fifth, Seventh, Ninth and Eleventh Circuits that claim to establish a well recognized principle that Article 1, Section 8 of the Constitution and the Sixteenth Amendment makes "absolutely clear" that Congress has the power to tax "incomes" in the language of the Sixteenth Amendment) "from whatever source derived."

2. The rehearing case In Re Becraft (Ninth) cites Ward (Eleventh). Neither court properly frames the Constitutional issues surrounding the Sixteenth Amendment raised in the instant appeal. Nor do the Appellee's cases Connor, Sauers, Coleman or Sullivan cited at p 51 of its Brief.

3. The case of Lovell (Seventh) cites Parker (Fifth) that cites another Fifth Circuit case of Lonsdale as follows:

> "As we observed in Lonsdale v. CIR, 661 F.2d 71 (5th Cir.1981), the sixteenth amendment was enacted for the express purpose of providing for a direct income tax. The thirty words of this amendment are explicit: "The Congress shall have power to lay and collect taxes on income, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.
>
> The Supreme Court promptly determined in Brushaber v. Union Pacific Ry. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493(1916), that the sixteenth amendment provided the needed constitutional basis for the imposition of a direct non-apportioned income tax."

4. This interpretation of Brushaber is **incorrect**. In that case, Chief Justice White stated the exact opposite:

> "The various propositions are so intermingled as to cause it to be difficult to classify them.
>
> We are of opinion, however, that the confusion is not inherent, but rather arises from the conclusion that the Sixteenth Amendment provides for a hitherto unknown power of taxation - that is, a power to levy an income tax which, although direct, should not be subject to the regulation of apportionment applicable to all other direct taxes.
>
> And the far-reaching effect of this ERRONEOUS assumption will be made clear by generalizing the many contentions advanced in argument to support it.
>
>                         The Chief Justice of the Supreme Court
>
>                         Brushaber vs Union Pacific R.R. Co 240 U.S. 1 at 10-11 (1916)

5. Chief Justice White reasserted the existence of the apportionment regulation post 16th Amendment as follows:

> "This must be unless it can be said that, although the Constitution, as a result of the Amendment, in express terms Excludes the criterion of source of income, that criterion yet remains for the purpose of destroying the classifications of the Constitution by taking an excise out of the class to which it belongs and transferring it to a class in which it cannot be placed consistently with the requirements of the Constitution.
>
> Indeed, from another point of view, the Amendment demonstrates that no such purpose was intended, and, on the contrary, shows that it was drawn with the object of **maintaining the limitations** of the Constitution and harmonizing their operation.

6. So the "limits of the Constitution" were in fact maintained! The Supreme Court in Brushaber insisted that the Sixteenth Amendment NOT be read in a fashion that it would cause destruction of one of the two great regulations on Congress' otherwise plenary power to tax:

> "But it clearly results that the propositions and the contentions under it, if acceded to, would cause one provision of the Constitution TO DESTROY another, that is, they would result in bringing the provisions of the Amendment exempting a direct tax from apportionment into irreconcilable conflict with the general requirement that all direct taxes be apportioned."

7. As set forth in Appellant's Brief, the confusion continues in more recent decisions down at the Appellate level over what was meant by "income" at the very time of the passage of the Sixteenth Amendment.

> "Thus it is well settled by the historical record that the purpose of the 16th Amendment was to overturn the Pollock Decision by way of a constitutional amendment. The purpose of this Amendment was not broader nor narrower than that.
>
> The Pollock decision dealt with net income from real estate and personal property. The Pollock Decision did not deal with taxes on the gross revenue of a natural person.
>
> As the Stanton Court 240 U.S. 103 (1916) said, "We are here dealing solely with the restriction imposed by the 16th Amendment.... from taking the income tax out of the class of indirect [taxes], to which it generically belongs, and putting it in the class of direct[taxes], to which it would not otherwise belong..."

>> Phil Hart http://www.newswithviews.com/money/money6.htm
>>
>> Extract from Writ of Certiorari filed with Supreme Court

8. Taxes on net income FROM REAL ESTATE AND PROPERTY are inherently indirect, taxes on gross income are inherently direct, per Adam Smith's Wealth of Nations quoted authoritatively by The Supreme Court in the Hylton Case cited in Brubasher:

> "Capitation taxes, so far as they are levied upon the lower ranks of people, are direct taxes upon the wages of labour, and are attended with all the inconveniences of such taxes." .

The congressional Record at the time of the passage of the 16th Amendment demonstrates this classification:

> "The poor man does not regard his wages or salary as 'an income'."
>
>> Governor A.E. Wilson (Kentucky) on the Income Tax Amendment, N.Y. Times, part 5, page 13, February 26, 1911.
>
> Mr. HEFLIN. "An income tax seeks to reach the unearned wealth of the country and to make it pay its share."
>
>> 44 Cong. Rec. 4420 (1909).

Chief Justice White referred to the type of income tax at issue as EXCISE taxes only (and hence the court did NOT deal with wages)!

9. Prior to Pollock, a handful of families were able to congregate great amounts of property as a benefit of high protective tariffs. Americans either bought goods and services from these families or paid the high tariff to purchase foreign products. This congregated property wealth was made subject of the tax act that was struck down by the Pollock Court. The public then clamored for an Amendment that would move property, and the income there from such as rents and dividends, from its protected class as an indirect tax over into the direct tax class.

Wages would remain protected as a direct tax subject to apportionment. They were never an excise tax, so the Brushaber court could not have been referring to wages when they took income from PROPERTY out of excise and moved that form of income over into direct tax class.

Property was posing a unique problem since taxation of property per se was a direct tax, but taxation of its fruits, like rents or dividends, was indirect. So to avoid confusion in the future, the 16th Amendment removed the need to classify property first as direct or indirect and also removed property from the two regulations of apportionment and uniformity. This was the holding in Brushaber.

10. It is those circuits of the Federal Courts of Appeal cited above that are not in alignment with the Supreme Court on this issue. Hopefully the Third Circuit will spend the time to properly review the historical environment that produced the 16th Amendment in order to ascertain the correct meaning of "income" as opposed to "wages."

ISSUE #2 UNFAIR TRIAL

1. The Appellant has argued that the Commissioner misled the Appellant by mistating the law on deduction of travel miles in the period prior to the trial, including its Trial Brief. The Appellee has failed to address this issue in its Appellate Brief.

ISSUE #3 REQUIREMENTS OF REVENUE RULE 99-7(2)

1. In the Walker decision, the Commissioner had set forth a NEW rule for contractors with only temporary places of business, then the IRS failed to follow that new rule, and eventually changed it.

2. The same pattern has been followed here. The Commissioner has established 3 rules for the deduction of miles driven from home for contractors who have no regular places of business, but work at a series of temporary work locations. According to Rev Rule 99(2) the Appellant need only establish that he had another "regular work location" as opposed to another "regular place of business".

   See Commissioner Brief at pg 41:

   The fact that (Bogue) performed work related errands while on his way to his worksites does not turn the places where he performed such errands into additional worksites.

3. Per the convoluted thinking of the Commissioner, if a contractor drives from a temporary work location to a supply house, he is working while at that supply house, but for those contractors that supply temporary jobsites ON A REGULAR BASIS, somehow they are NOT working when at that supply house. Clearly, Exhibit 17-J and 18-J established the Appellant went to supply houses on a regular basis.

4. The Commissioner had CLEARLY changed the operative term from "regular place of business" to "regular work location." The rule perfectly fits the General Contractor who has to run all over town to pick up supplies on a regular basis. He can spend half his day at supply houses, but somehow these supply houses are not :"regular work locations." The trial court inferred the following definition of "regular work location" :

   "ANY location at which the TP performs work or services on a regular basis."

"Any" obviously includes any place, which would include supply houses, where the taxpayer with temporary work locations goes on a regular basis! Appellant is NOT asking for a new law, but for the Appellate court to clearly place General Contractors (who regularly supply their temporary jobsites) inside Rev Rule 99-7 (2).

5. Given the complete lack of definitions for terms like Metropolitan area and regular work locations, the benefit of any doubt should go to the taxpayer.

6. If we assume for argument sake, that the Commissioner is correct and Appellant had to have 2 job locations, lets say on the same street in Philadelphia, the Appellant's initial drive to job #1 suddenly is no longer a commute per Rev Rule 99-7 (2). Why? What logic is there in this result?

Rather, Rev Rule 99-7(2) is ideal for the plight of the General Contractor who cannot move closer to any of his jobsites since they are usually temporary. He also cannot commute by bus or train as can his workers since he has to carry supplies.

7. Once the Appeal Court rules that the Appellant was NOT commuting, then the balance of the disallowed traveling expenses should also be restored, since these were tied integrally with the ruling of commuting at the trial level.

## OTHER ISSUES

1. Appellant relies on initial Brief for balance of issues,

### ORAL ARGUMENT REQUESTED

1. As both issues 1 and 2 affect large numbers of Americans, oral argument is requested.

CERTIFICATE OF SERVICE

    IT IS HERBY CERTIFIED that, on April 9, 2013, a true copy of the Appellant's Reply Brief* was mailed by first class mail, to the Appellee at the following address:

> CAROL BARTHEL
> Tax Division
> Department of Justice
> Box 502
> Washington D,C. 20004

*Glenn Bogue*

*\* AND MOTION TO FILE OUT OF TIME.*